UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

UNITED STATES OF AMERICA

           -v-                                    05-CR-960 (JPO)

JOSE HERNANDO RODRIGUEZ,              19-CV-11526 (JPO)

                      Defendant.                      ORDER

─────────────────────────────────────────

J. PAUL OETKEN, District Judge:

Defendant Jose Hernando Rodriguez is serving a term of imprisonment of fifty years following his convictions for murder in the course of a drug conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A), and for using a firearm to cause the death of a person, in violation of 18 U.S.C. § 924(j). In this action, Rodriguez's second habeas petition under 28 U.S.C. § 2255, he moves to vacate his § 924(j) conviction. Rodriguez has also moved for a sentence reduction under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), in light of Rodriguez's rehabilitation, his medical conditions, and the circumstances of his incarceration. (Dkt. Nos. 213, 218, 220.) The Government has opposed Rodriguez's motion. (*See* Dkt. Nos. 216, 217, 219.)

For the reasons that follow, Rodriguez's habeas petition is denied; Rodriguez's motion for a sentence reduction is granted and his sentence will be reduced to twenty-five years to be followed by five years of supervised release.

**I.      Habeas Petition Under 28 U.S.C. § 2255**

      **A.      Legal Standards**

Pursuant to the federal habeas corpus statute, 28 U.S.C. § 2255, a defendant may move to set aside a sentence when "the court was without jurisdiction to impose such a sentence" or the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief is available

"only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

**B.     Discussion**

Rodriguez argues that his § 924(j) conviction should be vacated because it is unclear which predicate act — the Hobbs Act robbery conspiracy or the narcotics conspiracy — was relied on by the jury in reaching its verdict, and Hobbs Act robbery conspiracy is no longer a valid predicate under *United States v. Davis*, 139 S. Ct. 2319 (2019).  (Dkt. No. 213 at 16–22.) The government does not dispute that Hobbs Act robbery conspiracy is an invalid predicate. Rather, it argues that Rodriguez's § 924(j) conviction should not be vacated for the following reasons: (1) Rodriguez's § 924(j) conviction is supported by a valid drug trafficking predicate, which can be derived by the jury's verdict finding Rodriguez guilty of 21 U.S.C. § 848(e)(1)(A) and because the trial record establishes that the conviction was supported by a narcotics trafficking predicate; (2) Rodriguez's petition is procedurally defaulted because it was not raised on direct review; and (3) even if this Court vacated Rodriguez's § 924(j) conviction, resentencing would be unnecessary because he is serving a concurrent 50-year term of incarceration for the § 848(e)(1)(A) conviction.  (Dkt. No. 216 at 8–25.)  Additionally, the government argues in a supplemental letter that this Court should apply the concurrent sentence doctrine and avoid reaching the merits of Rodriguez's claim altogether.  (Dkt. No. 219.)

This Court agrees with the government that the concurrent sentence doctrine applies. In *Kassir v. United States*, the Second Circuit held that the concurrent sentence doctrine applies when a defendant collaterally attacks one of his convictions and declined to reach the merits of

the defendant's petition because a ruling in the defendant's favor would not reduce the term of imprisonment he was required to serve. 3 F.4th 556, 564 (2d Cir. 2021). The *Kassir* court reasoned that "[t]he crux of a collateral proceeding is a challenge to the defendant's custody . . . . With custody being at the center of the collateral proceeding, the prejudice required to obtain relief must ultimately relate to the challenged custody." *Id.* at 566.

Here, even if the Court were to vacate Rodriguez's § 924(j) conviction, Rodriguez would still be subject to a fifty-year term of imprisonment for his § 848(e)(1)(A) conviction. As the government notes, both charges covered the same conduct — the robbery and murder of a female drug courier. (Dkt. No. 216 at 24–25.) And regardless, even if this Court were to reach the merits of Rodriguez's argument, the jury's verdict, which found Rodriguez guilty of murder during the course of a conspiracy to distribute or possess with intent to distribute over five kilograms of cocaine, as well as the trial record, which demonstrated that the object of the robbery conspiracy was an agreement to steal a large amount of cocaine, would be sufficient to find that Rodriguez's § 924(j) conviction was based on a valid predicate of drug trafficking. *See United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (upholding defendant's § 924(j) conviction even though the jury did not indicate whether this offense validly rested on a drug trafficking crime or on a robbery because "(1) the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy, and (2) the jury found that narcotics conspiracy proved beyond a reasonable doubt"). (*See also* Dkt. No. 216 at 14–17.)

II.     **Sentence Reduction Under the First Step Act**

    A.     **Legal Standards**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). The

3

First Step Act of 2018 provides that a district court "may reduce [a defendant's] term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

In *United States v. Brooker*, the Second Circuit held that Guidelines § 1B1.13 — which has not been amended since enactment of the First Step Act — is not "applicable" to compassionate release motions brought by defendants under the statute. 976 F.3d 228, 236 (2d Cir. 2020). "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237. The court further explained:

> It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. Beyond this, a district court's discretion in this area — as in all sentencing matters — is broad. The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason."

*Id.* at 237-38 (citations omitted; quoting 28 U.S.C. § 994(t) (emphasis added)).

Thus, under 18 U.S.C. § 3582(c)(1)(A)(i), a district court must "make the following determinations before granting a sentence reduction: (1) that the defendant complied with the administrative exhaustion requirement, (2) that the defendant has shown extraordinary and compelling reasons warranting a sentence reduction, (3) that the 18 U.S.C. § 3553(a) sentencing factors are consistent with a sentence that is less than that was previously imposed, and (4) that [the] sentence reduction is warranted by the extraordinary and compelling reasons." *United States v. Quinones*, No. 00 Crim. 761, 2021 WL 797835, at *1 (S.D.N.Y. Feb. 27, 2021).

4

B.   **Discussion**

1.   **Administrative Exhaustion**

On March 1, 2021, Rodriguez wrote to the FCI Fairton warden requesting a sentence reduction, and as of May 7, 2021, Rodriguez had not yet received a response.  (Dkt. Nos. 213 at 23–24, 213-1 at 2–3.)  Rodriguez has satisfied the exhaustion requirement of the First Step Act, and Rodriguez's motion is properly before the Court.

2.   **Extraordinary and Compelling Reasons**

Exercising the discretion granted under *Brooker*, the Court finds that Rodriguez has established extraordinary and compelling reasons for a sentence reduction based on three factors.

First, Rodriguez's underlying health conditions put him at a high risk of illness from COVID-19.  Rodriguez is a 52-year-old individual with obesity and was diagnosed with diabetes mellitus in 2019.  (*See* Dkt. No. 213-1 at 4–11, 15.)  He was also diagnosed with hyperlipidemia due to high cholesterol.  (*See* Dkt. No. 213-1 at 4, 9, 11, 15.)  Several courts have found that these conditions constitute extraordinary and compelling reasons for a sentence reduction.  *See, e.g.*, *United States v. Rodriguez*, 492 F. Supp. 3d 306, 310–11 (S.D.N.Y. 2020); *United States v. Anderson*, No. 16 Crim. 824, 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020).

As the government and defense both point out, Rodriguez received both doses of a COVID vaccine on March 24, 2021 and April 14, 2021 (Dkt. Nos. 213 at 25; 216 at 26), and his vaccination status surely reduces his risk of extreme illness from COVID.  However, as the new variant has demonstrated, being vaccinated does not guarantee protection against COVID.  *See, e.g.*, Julia Marnin, *'Virtually every' COVID omicron case at NY college was in fully vaccinated, official says*," Miami Herald (Dec. 15, 2021), https://www.miamiherald.com/news/coronavirus/article256617881.html (explaining that almost

every case of the Omicron variant at Cornell University had been detected in fully vaccinated students); Rachel Gutman, *The Pandemic of the Vaccinated Is Here*, The Atlantic (Dec. 9, 2021), https://www.theatlantic.com/health/archive/2021/12/fully-vaccinated-omicron-infections/620953/ (reporting on "large indoor gatherings of fully vaccinated people . . . becom[ing] super-spreader events in the age of Omnicron"). Moreover, it cannot be disputed that vaccinated incarcerated individuals are at an even higher risk of contracting COVID than vaccinated non-incarcerated individuals. *See, e.g.*, Joshua Manson, *What Officials Can Do to Keep Omicron From Ravaging One of Our Most Vulnerable Populations*, Slate (Dec. 20, 2021), https://slate.com/news-and-politics/2021/12/what-corrections-officials-can-do-to-prevent-the-spread-of-omicron-behind-bars.html; Alix M.B. Lacoste et al., *Fast, Frequent, and Widespread: COVID-19 Outbreaks Inside Federal Prisons*, UCLA Law COVID Behind Bars Data Project (Nov. 2021), https://uclacovidbehindbars.org/assets/federalprisonoutbreaks.pdf. Therefore, the Court concludes that Rodriguez's health conditions constitute an extraordinary and compelling reason to modify his sentence.

Second, while Rodriguez's health conditions may become less important if and when the pandemic ceases, the pandemic itself has not only posed a threat to Rodriguez's health but has made his incarceration more harsh, and effectively more punitive, than could have been expected by the sentencing court. "For someone with [Jose] Rodriguez's health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure [his] safety, means that 'the actual severity of [his] sentence as a result of the COVID-19 outbreak exceeds what the [sentencing] [c]ourt anticipated.'" *Rodriguez*, 492 F. Supp. 3d at 311 (quoting *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020)). Indeed,

many courts, including this Court, have taken into consideration the harsh and difficult conditions of detention during the pandemic during sentencing hearings.  *See, e.g.*, *United States v. Flores-Alberto*, No. 20 Crim. 668 (07/19/21 Sentencing Tr. at 12:5–12) ("[D]etention during this pandemic has been extremely difficult . . . . There's no question that it's been more harsh than in normal times . . . . [T]he defendant's pretrial conditions were qualitatively more severe in kind and degree than the prospect of such experience is reasonably foreseeable in the ordinary case."); *United States v. Del Carmen*, No. 18 Crim. 669 (05/21/21 Sentencing Tr. at 16:2–7) ("I do think the fact that you've served a significant number of months under these [pandemic] conditions since last year counts for a lot because I think . . . it's been harsher conditions, and I've been giving people credit because I think that effectively is like more punishment.") *United States v. Ramirez*, No. 20 Crim. 29 (10/20/20 Sentencing Tr. at 19:8–12) (explaining that "the nature of [the defendant's] detention during this pandemic has been really harsh . . . and, frankly, I think that makes it probably twice as punitive as it would otherwise be").  While these harsher than normal conditions would not be sufficient on their own to grant a sentence reduction, this factor weighs in favor of finding extraordinary and compelling reasons.[1]

Third, and importantly, the evidence of Rodriguez's rehabilitation counsels in favor of finding extraordinary and compelling reasons.  Rodriguez appears to have taken advantage of every programming opportunity available to him while incarcerated.  He has earned his GED, become fluent in English as a second language (although he had "limited or no fluency in English" when he was first incarcerated in the United States, *see* Dkt. No. 213-1 at 18), earned

---

[1] The Court also recognizes that Rodriguez was imprisoned in extremely difficult circumstances for eighteen months in a Colombian prison prior to his extradition.  *See* Dkt. No. 213 at 29 n.8. While the sentencing court was made aware of these conditions, this Court does take into consideration the unusually harsh circumstances for many years, including pre-trial and post-conviction, of Rodriguez's imprisonment.

his paralegal's certificate with the Blackstone Career Institute (*see* Dkt. No. 213-1 at 36), and has taken an impressive number of classes, including fitness programming, art classes, and computer classes (*see id.*).

Rodriguez has also worked throughout his incarceration, first as a unit orderly at FCI Coleman and volunteer instructor for Coleman's soccer clinic (*see* Dkt. No. 213-1 at 23, 34), and then as a Quality Assurance Manager with UNICOR at FCI Fairton (*see* Dkt. No. 213-1 at 35). According to a recent progress report, Rodriguez "actively participated in training opportunities relating to Quality Assurance, shows interest in his work and has dedicated himself to improving his skills. He has gained the respect of his co-workers, is a good example to the other workers, and brings a positive attitude and desire to learn within the work environment." (Dkt. No. 213-1 at 36.) His other progress reports consistently state that Rodriguez has been actively engaged in training opportunities, comes to work with a positive attitude, is respectful of authority, and is a leader to other employees. (*See, e.g.*, Dkt. No. 213-1 at 38 ("Along with being an excellent worker, [] Rodriguez has helped UNICOR through his ability to train and lead other employees . . . . I would be very comfortable hiring this individual in the future and feel he will be a productive member of society."); Dkt. No. 226-2 at 1 (Rodriguez is "easy to work with and can be depended upon to complete tasks on time").

Moreover, Rodriguez has only had one disciplinary infraction in his fifteen-year term of incarceration, and a minor one at that — failing to stand count in February 2010. (Dkt. No. 213-1 at 36.) Aside from this violation, correctional staff have consistently noted that Rodriguez "interacts appropriately with staff and is not considered to be a management concern." (Dkt. No. 226-1 at 2.)

8

Letters from other incarcerated individuals reflect Rodriguez's obvious growth and rehabilitation during his term of imprisonment.  For example, Cory Garries explains that he has "witnessed the positive support and impact that [Rodriguez] has had with others, including myself . . . .  Mr. Rodriguez has a true gift to make people laugh.  He is honest and very respectful to staff."  (Dkt. No. 213-1 at 41.)  Michael McCoy, who trained Rodriguez as a Quality Assurance Inspector, stated that Rodriguez is "one of the nicest [people] you will ever meet.  He will give you the shirt off his back.  He helps everyone around him."  (Dkt. No. 213-1 at 44.)  Perhaps most striking is the number of individuals who discussed how Rodriguez is a mentor to many incarcerated with him and has served as an excellent example of how to lead a productive and honorable life.  (*See, e.g.*, Dkt. No. 213-1 at 46 (explaining that Rodriguez volunteered to tutor people in mathematics and is a "very good example to the young people around us"); Dkt. No. 213-1 at 47 ("Rodriguez has been a good role model to myself and others inside the prison . . . .  He is very polite and always greets every one with a smile."); Dkt. No. 213-1 at 47 (Rodriguez "continues to help all the younger inmates understand that there are better ways to conduct [themselves] in this environment, he has really made a positive influence on my life."); Dkt. No. 213-1 at 52 ("I have come to even calling [Rodriguez] 'dad' he's a good role model and very social with everyone here."); Dkt. No. 213-1 at 56 (Rodriguez is consistently encouraging "those few that he was able to reach out to, realizing their best selves and full potential rather than their worst vices").  Rodriguez's family and close friends still fully support him, as evidenced by the many letters submitted with this petition.  (*See, e.g.*, Dkt. No. 213-1 at 62 (Rodriguez's son explaining that Rodriguez has changed and that he has "molded himself and improved as a person not by words but by actions"); Dkt. No. 213-1 at 66

9

(Rodriguez's daughter-in-law noting that Rodriguez has done "everything in his power to change and his behaviors talk[] more than words").

The Court concludes that this substantial evidence of rehabilitation and growth, along with Rodriguez's health conditions and the harsh nature of incarceration during COVID, weigh in favor of finding that extraordinary and compelling reasons exist to alter Rodriguez's sentence.

### 3. Section 3553(a) Sentencing Factors

The Court must next weigh the sentencing factors listed in Section 3553(a).  These include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment, to adequately deter criminal conduct, to provide the defendant with needed educational or vocational training or treatment, and to protect the public; (3) the kinds of sentences available; (4) the Sentencing Guidelines range and the statutory minimum and maximum; and (5) the need to avoid sentencing disparities between similarly situated defendants.  At the time of sentencing, the sentencing court determined that concurrent 50-year terms of imprisonment were sufficient, but not greater than necessary, to comply with these factors.  *See* 03/31/09 Sentencing Tr. at 18:8–15.  The sentencing court explained that but for the provision of the extradition agreement precluding imposition of a life sentence, it would "surely be something which would be seriously considered by the Court." *See id.* at 16:25–17:1.

The Court has carefully considered all of the Section 3553(a) factors.  While bearing in mind that "rehabilitation alone" is not sufficient to warrant a sentence reduction under the statute, the Court observes that the first and second factors set forth in Section 3553(a) are particularly relevant here.

10

With regard to the first factor, as detailed above, Rodriguez has made substantial efforts at rehabilitation since his incarceration and "evidence of postsentencing rehabilitation may be highly relevant." *Pepper v. United States*, 562 U.S. 476, 491 (2011).  His impressive education and vocational record, lack of disciplinary infractions, and glowing letters weigh strongly in favor of a sentence reduction.  Further, Rodriguez's friend, Angela Adriana Cardenas Castiblanco, has offered a place for Rodriguez to stay in Colombia (*see* Dkt. No. 213-1 at 67), and another one of his friends has represented that he would employ Rodriguez as a regional manager of a Colombian retail store (*see* Dkt. No. 213-1 at 69).  Also relevant is the fact that Rodriguez will be deported to Colombia when he has completed his sentence.  (*See* Dkt. No. 213-1 at 28.)  Rodriguez will certainly experience his deportation as a form of punishment itself, as his children and grandchildren reside in the United States.  *See, e.g.*, *United States v. Chin Chong*, No. 13 Crim. 570, 2014 WL 4773978, at *6 (E.D.N.Y. Sept. 24, 2014) ("Deportation is experienced as, and popularly understood to be, a form of punishment.").  It is unknown how long following his release from prison Rodriguez will be kept in an immigration detention center before he is deported to Colombia, which will also add time to his term of incarceration.

With regard to the second factor, which requires in part that the sentence "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense," *see* 18 U.S.C. § 3553(a)(2)(A), Rodriguez's crime was undoubtedly very serious and brutal, and these considerations certainly weigh in favor of a substantial sentence.  However, Section 3553(a) also requires the Court to consider whether the sentence "protect[s] the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).  Rodriguez's remorse (*see* Dkt. No. 213-1 at 1) and rehabilitation are relevant to this factor and counsel in favor of a sentence reduction.  Moreover, Rodriguez is fifty-two years old, and is therefore highly unlikely

to reoffend. This is especially so considering that, if his sentence is reduced to twenty-five years, then even with good time credit, he will be around sixty years old by the time he is released. And notably, Rodriguez's male pattern risk assessment, conducted by the Bureau of Prisons in January 2021, resulted in a risk level of "minimum." (Dkt. No. 226-1 at 1.) Section 3553(a) also requires that the sentence provide the defendant with needed educational or vocational training. 18 U.S.C. § 3553(a)(2)(D). As discussed above, Rodriguez has taken advantage of every opportunity provided in prison. His "substantial experience in prison industry, along with [his] promising support network and reentry plan, suggest that incarceration no longer serves to provide [Rodridguez] with needed educational and vocational training." *Quinones*, 2021 WL 797835, at *4.

After carefully considering these factors, the Court concludes that a sentence of twenty-five years' imprisonment, to be followed by five years of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in Section 3553(a).

### 4.     Whether the Sentence Reduction is Warranted

Finally, the Court must decide whether a sentence reduction is warranted by extraordinary and compelling reasons. Based on Rodriguez's extraordinary rehabilitation, unforeseeably harsh circumstances of imprisonment, and medical conditions, the Court concludes that the extraordinary and compelling reasons described above warrant a reduction in Rodriguez's sentence from fifty years to a term of twenty-five years' imprisonment to be followed by five years of supervised release.

### III.   Conclusion

For the foregoing reasons, Rodriguez's habeas petition is denied; and Rodriguez's motion for a sentence reduction is granted. Rodriguez's fifty-year sentence is hereby reduced to a term

of twenty-five years' (i.e., 300 months') imprisonment followed by five years of supervised release on the terms and conditions previously specified.

The Clerk of Court is directed to close the motion at Docket Number 213 in Case Number 05-CR-960.

SO ORDERED.

Dated: January 18, 2022
      New York, New York

_____
J. PAUL OETKEN
United States District Judge